

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2006

# Vurmaz v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Vurmaz v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1059.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1059

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1866

IBRAHIM VURMAZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,

Respondents

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No. A78-324-997)

Submitted under Third Circuit LAR 34.1(a)
on March 10, 2006

BEFORE: ROTH, ALDISERT, <u>Circuit Judges</u>
and RODRIGUEZ*, <u>District Judge</u>

(Filed:   May 23, 2006 )

OPINION

---

*The Honorable Joseph H. Rodriguez, Senior District Judge for the District of
New Jersey, sitting by designation.

**ROTH**, <u>Circuit Judge</u>:

Ibrahim Vurmaz petitions for review of the order of the Board of Immigration Appeals (BIA) affirming, without opinion, the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We will deny the petition.

Vurmaz, a native and citizen of Turkey, entered the United States on or about June 24, 2001 by way of Mexico. On June 24, 2001, the former Immigration and Naturalization Service issued a Notice to Appear, charging that Vurmaz was subject to removal under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled after inspection. Vurmaz appeared before the IJ on March 26, 2003, conceding removability and seeking relief from removal by filing applications for asylum, withholding of removal, and protection under CAT.

Vurmaz filed an affidavit describing his experiences in Turkey which formed the basis of his application. According to that affidavit, Vurmaz and his family were "harrassed and denied jobs and education" due to his Muslim identity. Vurmaz asserted that, in 1990, he joined the Refah (Welfare) Party, a "democratic party based on equality and freedom for working class people, with an emphasis of freedom of religious expression and practice for Muslims." Vurmaz explained that he eventually became a member of the Fazilet (Goodness) Party when, in 1997, the Welfare Party re-formed into

2

the Goodness Party as a "preemptive move... to carry on the beliefs, ideals and platforms of the [Welfare Party]," and subsequently, in1998, the Turkish Constitutional Court outlawed the Welfare Party.[1] Vurmaz stated that as a Party member, he "organized and led protests against the government's (i) closing of the Islamic schools, (ii) forcing girls to remove their Hijab... in order to attend school, and (iii) closures of the Imam Hatip (Islamic High Schools)," and, in 1999, he was elected to the City Council of Beyce. Vurmaz asserted that he "tr[ied] to escape from Turkey" when the "Constitutional Court began proceedings to shut down the [Goodness Party]."  In particular, Vurmaz claimed that he is "personally acquainted with people who have been arrested and/or harassed by the [National Intelligence Agency] because of their party membership, and [he] fear[s] that if [he] return[s] to Turkey [he] will be arrested too."

On March 26, 2003, the IJ denied Vurmaz's applications for asylum, withholding of removal, and CAT protection and ordered that he be returned to Turkey.  On February 17, 2005, the BIA affirmed, without opinion, the IJ's decision. On March 16, 2005, Vurmaz filed this petition for review.

We have jurisdiction to review final orders of the BIA under § 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252 (2005).  Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision.  Partyka v.

---

[1]  In July 2001, the European Court of Human Rights upheld the Turkish government's decision to close the Welfare Party, ruling that the closure could reasonably be considered to be a pressing social need for the protection of a democratic society.

<u>Attorney General</u>, 417 F.3d 408, 411 (3d Cir. 2005).

We review the IJ's determination that an applicant failed to establish eligibility for asylum by showing "that he/she is a refugee: a person unable or unwilling to return to the country of that person's nationality or habitual residence because of past persecution or because of a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion," under a "substantial evidence" standard of review. <u>Gao v. Ashcroft</u>, 299 F.3d 266, 271-72 (3d Cir. 2002). The applicant for asylum has a two-prong burden - he must demonstrate both (1) subjective and (2) objective fear of persecution. <u>Id.</u> The applicant demonstrates his subjective fear by "showing that [he] has a genuine fear" of persecution and demonstrates his objective fear with evidence "that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." <u>Id.</u> (citing <u>Elnager v. INS</u>, 930 F.2d 784, 786 (9th Cir. 1991)). The IJ's conclusion that an applicant failed to demonstrate both a subjective and objective fear of persecution must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." <u>Zubeda v. Ashcroft</u>, 333 F.3d 463, 471 (3d Cir. 2003) (quoting <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 483-84 (3d Cir. 2001)).

Substantial evidence supports the IJ's determination that Vurmaz failed to prove that he was persecuted and has a well-founded fear of future persecution if returned to Turkey.

First, Vurmaz failed to proffer evidence establishing that he suffered past persecution for religious and/or political opinion in Turkey. He testified that he had never

4

been arrested or charged with any crime in Turkey, including for being a member of the banned Welfare Party.[2]  Also he did not testify that he was wholly prohibited from practicing his religion and specifically testified that his religious practices did not differ from the religious practices by the majority of Muslims in Turkey.

Second, substantial evidence supports the IJ's finding that Vurmaz does not have an objective basis for his fear of future persecution if returned to Turkey.  Vurmaz failed to proffer evidence that the Turkish government is systematically arresting and/or detaining members of the former Goodness Party by reason of their prior membership.  Furthermore, although Vurmaz testified that the Turkish government prohibits formal Islamic education (i.e. the teaching of the Koran), the 2002 Department of State Report on International Religious Freedom states that ninety-eight percent of the Turkish population is Muslim and state-sponsored Islamic religious instruction in public eight-year primary schools is compulsory.  In addition, neither Turkey's constitution, nor its laws created pursuant to it, prohibit Vurmaz from wearing a religious head covering or otherwise engaging in religious observance in any place other than government-owned properties.  Thus, substantial evidence supports the IJ's finding that Vurmaz's fear of future persecution based on religion and/or political opinion is without an objective basis

---

[2]  Vurmaz testified that the outlawed Goodness Party, of which he was last a member, was closed in June of 2001.  Vurmaz was no longer in Turkey at that time.

and thus is not well-founded.[3]

The IJ's conclusion that Vurmaz failed to establish past persecution and a well-founded fear of persecution if returned to Turkey is supported by substantial evidence. Therefore, we will deny Vurmaz's petition for review.

---

[3] Because Vurmaz has not established that he has a "well-founded" fear of persecution for asylum purposes, he also has not met the higher standards of eligibility for withholding of removal, see Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), or for protection under CAT, see Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004).